**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE APPLICATION OF PIONEER CORPORATION FOR AN ORDER PERMITTING ISSUANCE OF SUBPOENAS TO TAKE DISCOVERY IN A FOREIGN PROCEEDING | Case No. MC 18-0037 UA (SS) |
| | **MEMORANDUM DECISION AND ORDER DENYING PIONEER CORPORATION'S _EX PARTE_ APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |
| | **[Dkt. No. 1]** |

**I.**

**INTRODUCTION**

On March 23, 2018, Plaintiff Pioneer Corporation ("Pioneer") filed an <u>Ex Parte</u> Application Pursuant to 28 U.S.C. § 1782 for an Order to Conduct Discovery for Use in Foreign Proceedings. ("Appl.," Dkt. No. 1). The Application is supported by a Memorandum of Points and Authorities ("P Memo.," Dkt. No. 1-2) and the declarations of Daniel R. Foster ("Foster Decl.," Dkt. No. 1-3) and Dr. Andreas Von Falck. ("Von Falck Decl.," Dkt. No. 1-7).

On April 2, 2018, Respondent Technicolor, Inc. ("Technicolor" or "Technicolor Inc.")[1] filed an Opposition ("Opp.," Dkt. No. 10-1), supported by the declarations of Joseph Opalach ("Opalach Decl.," Dkt. No. 10-2), and Ralph Nack ("Nack Decl.," Dkt. No. 10-3), all of which contained redactions, and the declaration of Sophie Le Menaheze ("Le Menaheze Decl.," Dkt. No. 10-4), which was unredacted.  On April 4, 2018, Technicolor filed a Corporate Disclosure Statement pursuant to Federal Rule of Civil Procedure 7.1. ("R Discl.," Dkt. No. 15). On April 6, 2018, with the Court's permission, (Dkt. No. 17), Technicolor filed unredacted versions of its Opposition (Dkt. No. 18) and the Opalach (Dkt. No. 18-1) and Nack (Dkt. No. 18-2) declarations under seal.[2]

On April 12, 2018, Pioneer filed a Reply ("Reply") in support of its Application and a second declaration of Dr. Andreas Von Falck ("Von Falck Decl. II"). (Dkt. No. 20). On April 19, 2018, Technicolor filed a Request for Leave to File a Sur-Reply, (Dkt. No. 23), which the Court granted. (Dkt. No. 23). On April 24, 2018, Technicolor filed a Sur-Reply ("Sur-Reply) and a second declaration of Ralph Nack ("Nack Decl. II"). (Dkt. No. 25).

---

[1] Where helpful for clarity of context, the Court will occasionally refer to Technicolor as "Technicolor Inc." to distinguish it from its parents and affiliates.  References to "Technicolor" without further qualification are to Technicolor Inc. alone.

[2] The redacted version of Opalach's declaration filed at Dkt. No. 10 did not include any exhibits.  Opalach's Exhibits A, B, and C were filed under seal at Dkt. No. 18.

The redacted version of Nack's declaration filed at Dkt. No. 10 included two exhibits, Exhs. 1 and 3, which were unredacted.  Nack's Exhibits 2, 4 and 5 were filed under seal with the unredacted version of Nack's declaration at Dkt. No. 18.

On May 8, 2018, the Court held a hearing. For the reasons stated below, Pioneer's Ex Parte Application is DENIED.

## II.

### FACTUAL BACKGROUND

Plaintiff Pioneer Corporation "is a global company, with headquarters in Tokyo, Japan." (P Memo. at 3). Pioneer produces car entertainment and audio products. (Id.).

Respondent Technicolor Inc. is a Delaware company headquartered in Hollywood, California. (Le Mehaneze Decl. ¶ 3). Technicolor sells "a variety of entertainment-related products and services." (P Memo. at 3). Technicolor Inc. "is a wholly-owned subsidiary of Technicolor USA," (R Discl. at 2), which is also a Delaware corporation headquartered in Hollywood. (Le Mehaneze Decl. ¶ 3). Technicolor USA, in turn, "is a wholly-owned subsidiary of Technicolor SA, a publicly-held French corporation." (R Discl. at 2; see also Le Mehaneze Decl. ¶ 4).

Thomson Licensing SAS ("Thomson") is another subsidiary of Technicolor SA and is similarly a French corporation. (Id. ¶¶ 5-6). Thomson does not produce products, "but instead licenses patents that have been acquired from third party inventors." (P Memo. at 3). Thomson is a sister corporation of Technicolor USA, and is not a subsidiary of either Technicolor USA or Technicolor Inc. (Le Mehaneze Decl. ¶¶ 5, 7). Thomson Licensing SAS has no direct presence in the United States. (Id. ¶ 5). However, Thomson

Licensing LLC is located in Princeton, New Jersey. (Opalach Decl.
¶ 2). Thomson also has a German-Austrian subsidiary called Thomson
Multimedia Sales Germany & Austria GmbH. (P Memo. at 3).

In 2001, Pioneer entered into an agreement with Thomson
Multimedia Sales Germany & Austria GmbH to license certain MP3
technology patents (the "License Agreement"). (Id.). Pioneer paid
royalties pursuant to the License Agreement for thirteen years.
(Id.). However, Pioneer eventually concluded that it had overpaid
its license fees by over $15 million due to "the expiration of the
majority of the Licensed patents in October 2012." (Id.).

Pioneer states that it attempted to negotiate with Technicolor
SA, Thomson's parent company, for reimbursement of the alleged
overpayments. (Id. at 4). When those negotiations failed, "on
December 30, 2016, Pioneer filed an action against Thomson
Licensing SAS in the German court, seeking recovery of some
portions of the $15,161,393.00" overpayment (the "German Claim" or
"German proceedings"). (Id.). As described by Pioneer, the German
Claim alleges that Pioneer's "products sold between October 2012
and December 2014 did not practice any valid unexpired Licensed
patents." (P Memo. at 3). The German court held a hearing on
Pioneer's claims on February 8, 2018. (Von Falck Decl. ¶ 3; see
also Nack Decl., Exh. 3 (minutes of hearing)). On March 15, 2018,
the German court dismissed Pioneer's claims as "unfounded." (Id.,
Exh. 1 at 14 (German court's written decision); see also Von Falck
Decl. ¶ 3). Pioneer represented at the hearing that it has filed

an appeal, and that argument will be heard in the German court of appeals on June 22, 2018 (the "Appeal").

## III.

## STANDARD

Section 1782(a) provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

\\

\\

28 U.S.C. § 1782(a); see also IPCom GmbH & Co. KG v. Apple Inc., 61 F. Supp. 3d 919, 921–22 (N.D. Cal. 2014) ("Under 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege.") (internal quotation marks and citation omitted).

Accordingly, the court must, at a minimum, make three findings before granting a request for discovery pursuant to section 1782(a): "(1) the application is made by a foreign or international tribunal or 'any interested person'; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the person or entity from whom the discovery is sought is a resident of or found in the district in which the application is filed."  In re Dubey, 949 F. Supp. 2d 990, 992 (C.D. Cal. 2013) (quoting 28 U.S.C. § 1782(a) and citing In re Bayer, 146 F.3d 188, 193 (3d Cir. 1998)).  The Supreme Court instructs that the phrase "any interested person" "plainly reaches beyond the universe of persons designated 'litigant.'"  Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 256 (2004).  While the discovery must be "for use" in a foreign proceeding or tribunal, "[s]ection 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings."  Id. at 258.  "[T]he 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but [it] need not be 'pending' or 'imminent.'"  Id. at 247 (emphasis added).  Additionally, the use of the word "tribunal" in the statute is intended "to ensure that 'assistance is not confined to proceedings before conventional

courts,' but extends also to 'administrative and quasi-judicial proceedings.'" Id. at 249 (quoting S. Rep. No. 1580, 88th Cong., 2d Sess., 7 (1964)).

Nonetheless, as the Ninth Circuit has explained, "[t]he absolute requirements under § 1782 are only part of the story . . . . The courts have stressed that, even if those requirements are met, a district court still retains the discretion to deny a request." In re Premises Located at 840 140th Ave. NE, Bellevue, Wash., 634 F.3d 557, 563 (9th Cir. 2011); see also In re Ex Parte Application of Qualcomm Inc., 162 F. Supp. 3d 1029, 1035 (N.D. Cal. 2016) ('[S]imply because a court has the authority under Section 1782 to grant an application does not mean that it is required to do so."). "'Congress gave the federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782.'" In re Premises, 634 F.3d at 563 (quoting Four Pillars Enters. Co. v. Avery Dennison Corp., 308 F.3d 1075, 1078 (9th Cir. 2002)).

In assessing whether to exercise its discretion and authorize discovery, a court may consider "a wide range of potentially applicable factors," including:

> whether "the person from whom discovery is sought is a
> participant in the foreign proceeding"; "the nature of
> the foreign tribunal, the character of the proceedings
> underway abroad, and the receptivity of the foreign
> government or the court or agency abroad to U.S. federal-

court judicial assistance"; whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and whether the request is "unduly intrusive or burdensome."

In re Premises, 634 F.3d at 563 (quoting Intel, 542 U.S. at 264 65). In addition, the Ninth Circuit has indicated that "the district court should deny the request if the district court 'suspects that the request is a fishing expedition or a vehicle for harassment[.]'" In re Premises, 634 F.3d at 563 (quoting In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago, 848 F.2d 1151, 1156 (11th Cir. 1988), abrogated in part on other grounds by Intel, 542 U.S. at 259).

## IV.

### DISCOVERY REQUESTED

Pioneer seeks authorization to serve a subpoena with twenty-eight discovery requests on Technicolor Inc. (Appl., Exh. 1 at 8-13). The subpoena broadly defines both Technicolor, Inc. and Thomson Licensing SAS to include all of the respective companies' subsidiaries, parents, affiliates, and related entities. (Id. at 6). The information sought falls into two categories: (1) "documents regarding whether Pioneer practices any of the patent claims included in the license between Pioneer and Thomson," and (2) "MP3 patent license agreements between Thomson and any of its other licensees, where the rates charged and/or enforced

regarding such licenses were less than those charged of Pioneer." (Von Falck Decl. ¶ 4).

Request Nos. 1-4 seek documents falling into the first category of requests. Specifically, Request No. 1, the <u>only</u> request that is not explicitly directed to both Technicolor and Thomson, seeks "all documents" related to Pioneer's non-use of any of the patents in the License Agreement. (Appl., Exh. 1 at 8). Request Nos. 2 and 3 seek all of Technicolor's and Thomson's communications addressing the possibility that Pioneer's products with MP3 functionality "may not practice all of the patents licensed in the License Agreement," as well as documents sufficient to show when either entity "first became aware" of that issue. (<u>Id.</u> at 8-9). Request No. 4 seeks documents sufficient to show when Technicolor or Thomson "first became aware" that certain patents included in the License Agreement "either would expire or had expired." (<u>Id.</u> at 9).

All of the remaining requests, <u>i.e.</u>, Request Nos. 5-28, seek documents (or, in Request No. 8, a declaration) falling into the second category of requests. Specifically, Request Nos. 5 and 6 seek documents sufficient to show either that Technicolor or Thomson entered into license agreements that charged lower rates to other companies than the rate charged to Pioneer, or that the rates collected were reduced, without any attempt to collect the underpayment. (<u>Id.</u>). Request No. 7 seeks copies of all the MP3 patent licenses that Technicolor or Thomson entered into where the rates charged or enforced were less than Pioneer's rates. (<u>Id.</u>).

Request No. 8 demands a declaration listing all MP3 licenses that Technicolor or Thomson entered into where the "rates charged and enforced were equal to or greater than those charged of Pioneer." (Id.). Finally, Request Nos. 9-28 seek "all patent license agreements," including amendments, for MP3 technology that either Technicolor or Thomson entered into with twenty specifically identified companies, including Bose, LG Electronics, Mitsubishi Electric, Panasonic, Phillips, Samsung, Sanyo Electric Company, Sharp, Sony and Yamaha, among others. (Id. at 10-13).

## V.

### THE PARTIES' CONTENTIONS

Pioneer states that it is seeking discovery for use in a potential[3] appeal of the dismissal of its German Claim. (Von Falck Decl. ¶ 3) ("The decision [by the LG Munchen I District Court dismissing Pioneer's claim] may be appealed to the Higher Regional Court of Munchen.") (emphasis added). Alternatively, Pioneer offers that the discovery may also be used in "potential related legal proceedings before the European Commission." (P Memo. at 2) (emphasis added). According to Pioneer, the requests meet section 1782's statutory criteria because Pioneer is an "interested party," Technicolor resides in this district, and the discovery is for use in foreign proceedings. (Id. at 5-6). Pioneer emphasizes that pursuant to the Supreme Court, "'it is not necessary for the

---

[3] As of the close of briefing, Pioneer had not yet filed an appeal. However, as stated above, Pioneer represented at the hearing that the Appeal has now been filed and is scheduled for a hearing.

adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding.'" (Id. at 7) (quoting Intel, 542 U.S. at 259). Furthermore, Pioneer contends that the Intel discretionary criteria are satisfied because: (1) Technicolor was not a participant in the German proceeding and is not anticipated to be a party in any other European proceeding, so the requested discovery would not be available without the assistance of this Court; (2) the German tribunals are receptive to discovery obtained through 28 U.S.C. § 1782; (3) the discovery is sought in good faith and not for the purpose of circumventing foreign proof-gathering restrictions; and (4) the "narrowly-tailored" discovery is neither intrusive nor unduly burdensome. (P Memo. at 8-9). Pioneer states that it would be willing to accept production of the documents under the designation "for Outside Counsel's Eyes Only." (Id. at 9).

Technicolor contends that Pioneer's request for discovery should be denied because it is no more than a fishing expedition prohibited under section 1782. (Opp. at 1). Technicolor first claims that Pioneer does not meet section 1782's statutory requirements. Technicolor argues that Pioneer is not an "interested party" with respect to Request Nos. 5-28, which relate to Pioneer's most favored nation clause, because that issue was not previously raised in any forum. (Id. at 7). Similarly, Technicolor contends that the discovery is not "for use" in a foreign proceeding because after the dismissal of the German Claim, no proceeding was reasonably contemplated. (Id.) at 8). Finally, to the extent that the requests are directed to Thomson,

Technicolor argues that the party from whom the discovery is sought is not a resident of the Central District.  (Id. at 9).

Technicolor also contends that Pioneer does not satisfy the discretionary Intel factors.  Technicolor argues that the factor addressing the "nature and character of the foreign proceedings" for which the discovery is sought is irrelevant because following the dismissal of the German Claim, whether there will be any other potential proceedings is pure speculation.  (Id. at 12).  Technicolor also notes that all but one of the requests are directed equally to Thomson, the defendant in the German proceedings, which suggests that the information Pioneer now seeks could have been obtained through Thomson in that forum, if such discovery were permitted.  (Id. at 10).

Technicolor further argues that the requests are unduly burdensome and invasive.  According to Technicolor, the discovery is irrelevant because the German court has already dismissed Pioneer's complaint and the vast majority of requests concern the most favored nation clause in Pioneer's License Agreement, which was not part of the German Claim.  (Id. at 2).  To the extent that the requests seek production of confidential agreements with twenty companies, Technicolor maintains that the discovery is grossly disproportionate to the scope of the German proceedings.  (Id. at 2-3).  Technicolor contends that the discovery is also unnecessary because Thomson has already provided Pioneer with information showing that Pioneer's products were still covered by non-expired patents, (id. at 11), and that none of Thomson's licenses with

third parties included more favorable royalty rates than those in Pioneer's License Agreement. (Id. at 11-12). Additionally, Technicolor argues that the requests are overly broad and unduly burdensome because they are not meaningfully, or at all, limited by time, geography, or subject matter. (Id. at 12-15).

Technicolor further contends that the discovery is unjustifiably intrusive. According to Technicolor, even if the German court prohibited public access to all of the requested documents that Pioneer might submit to the court, it would not prevent any of Pioneer's business people from accessing those documents because Pioneer is a party to the German proceedings. (Id. at 3). Finally, Technicolor notes that there is no guarantee that the highly confidential third party information that Pioneer seeks will be protected from disclosure because there is no protective order in place in the German proceedings. (Id. at 15).

At the hearing, Pioneer emphasized that the "for use" requirement is no longer seriously at issue because the Appeal has been filed in the German court of appeals. Pioneer further represented that materials produced by Technicolor can be used in the Appeal because pursuant to German law, the record on appeal is not closed as it may be in U.S. courts. Furthermore, Pioneer argued that all of the materials requested are relevant, including documents seeking information relating to the most favored nation clause in Pioneer's License Agreement, because the information goes broadly to whether Thomson was unjustly enriched. Pioneer also stated that it would agree to narrow the scope of Request Nos. 5-

8 to encompass only competing products, and emphasized that Pioneer would abide by any protective order issued by this Court even in the German Appeal. While conceding that German courts do not issue protective orders in the same manner as U.S. courts, Pioneer also represented that it would agree to exclude certain employees from hearings in the Appeal in which the documents produced would be disclosed or discussed.

Technicolor argued that there has been no showing that Pioneer's most favored nation clause is at issue in the Appeal, and emphasized that Pioneer is simply engaging in a fishing expedition. Technicolor further contended that Pioneer has not shown that Technicolor's confidentiality concerns can be adequately addressed in the German courts.

**VI.**

**DISCUSSION**

The Court is not fully persuaded that Pioneer's Application satisfies the statutory criteria for obtaining discovery in the United States for use in a foreign proceeding, although it acknowledges that the fact that the Appeal has been filed brings the Application closer to meeting that criterion than was the case when the Application was submitted. However, even if the Application does cross that minimal statutory threshold, the Court still finds that the Application must be denied pursuant to the discretionary criteria identified by the Intel Court.

## A.   **Statutory Factors**

Section 1782(a) requires a showing that (1) an "interested person" is seeking discovery from (2) a person residing in this district (3) "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).

"An 'interested person' seeking to invoke the discovery mechanism set forth under § 1782 may include 'not only litigants before foreign or international tribunals, but also foreign and international officials as well as any other person whether he be designated by foreign law or international convention or merely possess a reasonable interest in obtaining [judicial] assistance.'" Akebia Therapeutics, Inc. v. FibroGen, Inc., 793 F.3d 1108, 1110 (9th Cir. 2015) (quoting Intel, 542 U.S. at 256–57).  Pioneer made a showing at the hearing that because the Appeal has been filed, it is a "litigant" before a foreign tribunal.  Additionally, as a signatory to the License Agreement, it has a "reasonable interest" in obtaining judicial assistance to acquire information related to that Agreement.  Pioneer therefore satisfies the first statutory criterion.

Furthermore, it is undisputed that Technicolor Inc., the entity to which the proposed subpoena is specifically directed, is a resident of the Central District.  To the extent that twenty-seven of the twenty-eight discovery requests explicitly seek information about Thomson Licensing SAS in addition to Technicolor Inc., the Court understands the requests to seek information about

15

1   Thomson only to the extent that such information is in the
2   possession, custody or control of Technicolor Inc.   Although
3   Pioneer attempts to define Technicolor Inc. and Thomson Licensing
4   SAS so broadly as to seemingly encompass all of the worldwide
5   operations of any of the companies' respective subsidiaries,
6   parents and affiliates, Pioneer would need to make a showing that
7   documents concerning those entities are within Technicolor Inc.'s
8   possession, custody or control.  If they are not, Technicolor Inc.
9   would have no obligation to produce them.  Fed. R. Civ. P. 34(a)(1).
10  However, because Technicolor Inc. is the entity to be served with
11  the proposed subpoena and resides in this district, the second
12  statutory criterion also is satisfied.

13

14      It is less clear that all of the information Pioneer seeks is
15  "for use in a proceeding in a foreign or international tribunal,"
16  despite the pendency of the Appeal.   The only proceeding that
17  Pioneer clearly identifies in its Application is the German Claim,
18  which the LG Munchen I District Court dismissed as "unfounded."  As
19  described by Pioneer, that proceeding put at issue whether
20  Pioneer's products sold between October 2012 and December 2014
21  practiced "any valid unexpired Licensed patents."  (P Memo. at 3).
22  While adjudicative proceedings need not be pending or imminent for
23  a court to order discovery, a "dispositive ruling" must "be within
24  reasonable contemplation."   Intel, 542 U.S. at 259 (emphasis
25  added).
26  \\
27  \\
28  \\

1    Addressing the meaning and application of the <u>Intel</u> Court's
2  "reasonable contemplation" requirement, the Second Circuit
3  observed:

4

5         [T]he applicant must have more than a subjective intent
6         to undertake some legal action, and instead must provide
7         some objective indicium that the action is being
8         contemplated.  In this regard, our sister Circuits have
9         stated that "a district court must insist on reliable
10        indications of the likelihood that proceedings will be
11        instituted within a reasonable time."  <u>Application of</u>
12        <u>Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS</u>
13        <u>Forwarding (USA), Inc.</u>, 747 F.3d 1262, 1270 (11th Cir.
14        2014) (internal quotation marks omitted); <u>accord</u>, <u>In re</u>
15        <u>Letter of Request from the Crown Prosecution Serv. of</u>
16        <u>the U.K.</u>, 870 F.2d 686, 692 (D.C. Cir. 1989) (R.B.
17        Ginsburg, J.) (same).  We need not decide here what
18        precisely an applicant must show to establish such
19        indications; it suffices to observe that the Supreme
20        Court's inclusion of the word "reasonable" in the
21        "within reasonable contemplation" formulation indicates
22        that the proceedings cannot be merely speculative.  At
23        a minimum, a § 1782 applicant must present to the
24        district court some concrete basis from which it can
25        determine that the contemplated proceeding is more than
26        just a twinkle in counsel's eye.
27  \\
28  \\

Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 123–24 (2d Cir. 2015); see also In re Sargeant, 278 F. Supp. 3d 814, 822 (S.D. N.Y. 2017) ("[T]he potential proceedings that [the § 1782 applicant] may (or may not) bring depending on what the discovery reveals are not 'within reasonable contemplation.'") (emphasis in original); In re Asia Mar. Pac. Ltd., 253 F. Supp. 3d 701, 707 (S.D. N.Y. 2015) ("The proceedings 'cannot be merely speculative,' and the burden is not satisfied [just] because the petitioner has retained counsel and is discussing the possibility of initiating litigation.").

Furthermore, the "for use" requirement "focuses on the 'practical ability of an applicant to place a beneficial document -- or the information it contains -- before a foreign tribunal.'" In re Sargeant, 278 F. Supp. 3d at 822 (quoting In re Accent Delight Int'l Ltd., 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original)). The applicant must be in a "position to have the [tribunal] consider that evidence" or have some "means of injecting the evidence into the proceeding" to "use" the evidence. In re Accent Delight Int'l Ltd., 869 F.3d at 131 (emphasis, citation and quotation marks omitted). Accordingly, "even if discovery is 'useful' to an applicant, the discovery will not be deemed 'for use' in a foreign proceeding unless the applicant can introduce the information as evidence in that proceeding." In re Sargeant, 278 F. Supp. 3d at 822.

Pioneer broadly argued at the May 8 hearing that information obtained pursuant to the instant subpoena may be used in the Appeal.

Pioneer specifically referred to the second declaration submitted by Dr. von Falck, in which he testified that "any results of this present discovery exercise that were not previously available to Pioneer without Pioneer's fault can be used as new evidence on appeal." (Von Falck Decl. II ¶ 2) (emphasis added). However, Pioneer did not satisfactorily address why the materials it now seeks -- only after the dismissal of its claim in the German proceedings -- would not have been available during the pendency of that claim. The generic categories of documents requested were certainly known to Pioneer long before the termination of the German claim. Furthermore, despite Pioneer's representation at the hearing that Pioneer's action broadly concerns Thomson's purported "unjust enrichment," as opposed to the viability of the patents it licensed, it is unclear how the vast majority of requests, which seek information relating to Pioneer's most favored nation clause, could be "for use" in the appeal because that issue was not squarely raised in the German Claim. Accordingly, it appears that Pioneer is unable to show that the information requested is "for use" in a reasonably contemplated foreign proceeding, both because its practical ability to introduce the materials to expand the record on appeal is questionable, and because the majority of the Requests have no real connection to the viability of the patents at issue.[4]

---

[4] Nor has Pioneer shown that any other proceedings are in reasonable contemplation. Pioneer states that following the dismissal of its claims in the German proceedings, there may be "potential legal proceedings before the European Commission" in addition to the Appeal. (P Memo. at 2). The tentativeness of Pioneer's representations does not provide the Court with any assurance that proceedings are likely to be instituted within a reasonable time. Instead, it appears to the Court that Pioneer is only vaguely

**B.    Discretionary _Intel_ Factors**

Even if Pioneer were able to satisfy the minimal statutory criteria, the Court would not exercise its discretion to grant the Application.   The discretionary factors a court may consider in deciding whether to authorize discovery under section 1782 include: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign tribunal to U.S. federal court assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the U.S.; and (4) whether the request is unduly intrusive or burdensome.   Intel, 542 U.S. at 264-65; In re Premises, 634 F.3d at 563.

Technicolor was not a participant in the German proceedings, which weighs slightly in favor of authorizing discovery.   However, the other factors weigh against the authorization of discovery.   As for the "character of the proceeding underway," the Court remains concerned that because discovery is being requested for use in an appeal, Pioneer's ability to use the discovery in that proceeding may be limited or even prohibited.   Furthermore, Pioneer's conclusory assertion that the German courts and the European

considering that it might pursue its claims in some forum or another if the discovery it requests is favorable.   "Courts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it."   In re Sargeant, 278 F. Supp. 3d at 823.

Commission "do not prohibit Pioneer from seeking documents from Technicolor under Section 1782" and its representation at the hearing that the German courts do not permit American-style discovery do not address the concern that the discovery requests may be an attempt to circumvent foreign proof-gathering restrictions. Additionally, Pioneer has not satisfactorily explained why it did not seek the requested information sooner from Technicolor. However, it is the fourth of these factors, the invasiveness and burden of complying with the requests, that is most damaging to Pioneer's Application.

The Court notes that Technicolor Inc. is the <u>subsidiary</u> of a <u>sister corporation</u> (Technicolor USA) to the party most likely to be in possession of information relevant to the issues raised in the German proceedings -- Thomson Licensing SAS. Pioneer readily admits that Technicolor Inc. was not a party to the German proceedings and that "it is expected that if there are other proceedings in Europe . . . Thomson Licensing SAS, and not Technicolor, will be party to those proceedings." (P Memo. at 8). The third party status of the person or entity upon which the discovery request is to be propounded may support an § 1782 application where the materials requested would not be available from a party to the proceedings. Here, however, Pioneer seeks to obtain documents, to the extent that any exist, about <u>Thomson</u> that would most logically be in the possession, custody or control of Thomson, which was a party to the proceedings. The Court is reluctant to subject a third party to the burden of searching for

and producing documents that appear to be more logically in the possession of a party.

Complying with the requests would also be unduly burdensome because the requests themselves are patently overbroad. "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015). Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Accordingly, the right to discovery, even plainly relevant discovery, is not limitless. Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other

source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

The breadth of the requests suggests that Pioneer is overreaching and that requiring compliance with the requests would put an undue burden on Technicolor. For example, the subpoena defines "time period" to mean "on or after November 2001." (Appl., Exh. 1 at 6). None of the discovery requests actually uses the phrase "time period," and so, on their face, the requests appear unlimited as to time. However, even assuming that Pioneer intended to "limit" all of its requests to November 2001 to the present, there is simply no showing that the production of nearly seventeen years' worth of documents is or would have been necessary or proportional to the litigation of the German Claim, which concerned the expiration of patents in 2012 and Pioneer's continued payments through 2014. Additionally, the vast majority of requests seek information about a topic -- the most favored nation clause in Pioneer's License Agreement -- that was not at issue in the German proceedings. (Request Nos. 5-28). Even if it were, the subpoena demands production of "all patent license agreements," including any amendments to the agreements, between Technicolor or Thomson and twenty major international firms concerning any aspect of MP3 technology. (Request Nos. 9-28). This appears to be more of a fishing expedition for claims that Pioneer may someday wish to bring against Thomson than a targeted search for materials in

23

1  Technicolor's possession related to disputes at issue in the German

2  proceedings.

3

4      The subpoena also requires Technicolor to submit a declaration

5  listing "all licenses" Technicolor or Thomson entered into for MP3

6  functionality "where the rate charged and enforced were equal to

7  or greater than those charged of Pioneer." (Request No. 8)

8  (emphasis added). Even if it were proper to require a producing

9  party to create a document in response to a document request, which

10 it is not, a complete response to this request would require

11 Technicolor to review every single MP3 license and related royalty

12 record in its possession, custody or control. Indeed, because the

13 subpoena also demands production of "[a]ll licenses Technicolor or

14 Thomson entered into with other companies for MP3 functionality

15 where the rates charged and/or enforced were less than those

16 charged of Pioneer," responding to the subpoena would require an

17 accounting of 100% of Thomson's MP3 license agreements, either by

18 the production of the license itself, or by its inclusion in a

19 declaration, depending on the rates charged in comparison to

20 Pioneer's rates. (Request No. 7) (emphasis added). A court may

21 modify a section 1782 discovery request to narrow the scope and

22 reduce the burden of production. Mees, 793 F.3d at 302; Consorcio

23 Ecuatoriano de Telecomunicaciones, 747 F.3d at 1273. However, even

24 limiting the scope of the requests, as Pioneer proposed at the

25 hearing, to competing products, no amount of narrowing would make

26 the information sought by these requests relevant to the matters

27 at issue in the German proceedings, which concerned the purported

28 expiration of Thomson's patents.

The requested discovery is also unduly burdensome because it appears that Pioneer may already be in possession of the relevant information. Technicolor has submitted evidence showing that Thomson's representatives met with Pioneer on several occasions in 2015 and 2016 to discuss whether Pioneer's products are still covered by non-expired MP3 patents. (See Opalach Decl., ¶ 3 & Exhs. A-C). The evidence further shows that Thomson's representatives provided detailed information explaining why Thomson believes that Pioneer's products are covered by the unexpired patents under the License Agreement. (Id.). Pioneer does not address those meetings or disavow that Thomson provided relevant information related to the German Claim. Instead, Pioneer contends that it was not satisfied with representations by Thomson's counsel regarding Pioneer's most favored nation status, which, again, was not at issue in the German Claim. (Von Falck Decl. ¶¶ 5-9; Von Falck Decl. II ¶¶ 7-8). Pioneer's evidence reveals that Pioneer sent Thomson a list of companies and asked Thomson's counsel to "confirm that your client did not, at any point in time between the beginning of the licensing relationship with [Pioneer] and today, grant a license to any of its relevant licensees, and in particular, to the licensees listed above, which marketed products that were in competition with the Licensed Products, upon more favorable royalty rates as set forth in Article 3.1 of the License Agreement." (Id., Exh. C at 3). As evidenced by Pioneer's own exhibits, there is no serious dispute that Thomson provided the requested confirmation. (Id., Exh. E at 2).

\\

\\

Finally, production of the discovery would be unduly invasive of highly confidential third party information. Pioneer states that it would be willing to allow Technicolor to designate documents "for Outside Counsel's Eyes Only." (P Memo. at 9). However, that designation would seem to undermine the contention that the discovery is "for use" in a foreign proceeding because, strictly construed, it would severely limit the use of the documents as evidence. Furthermore, there is no current protective order in place to protect confidential information from disclosure, and even if this Court entered a protective order, there is no evidence that a German court would obey such an order. (Opp. at 9; Nack Decl. II ¶ 3). Finally, if Pioneer were to use any of the third-party licenses requested in a court filing, even if the German court prohibited access to the documents to the public, such restrictions would seemingly not apply to Pioneer's employees. (Nack Decl. ¶ 7). This would include Pioneer's "competitive decision makers," who would then be privy to confidential information about Pioneer's direct competitors that could put the third parties at a competitive disadvantage. (Id.). Despite Pioneer's representation that it would be willing to voluntarily exclude certain employees from proceedings where confidential information is discussed, there is no assurance that the highly sensitive information Pioneer seeks about its own competitors would truly be protected.

Accordingly, the Court concludes that Pioneer has failed to show that the requested discovery is "for use" in reasonably contemplated foreign proceedings. Even if it were, the

discretionary <u>Intel</u> factors do not persuade the Court to exercise its discretion to grant Pioneer's request.

### VII.

### CONCLUSION

For the foregoing reasons, Pioneer's <u>Ex Parte</u> Application for an Order to Conduct Discovery for Use in Foreign Proceedings is DENIED.  The Deputy Clerk is directed to terminate all pending motions and mark this case as closed.

DATED:  May 9, 2018

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE